Good morning. May it please the Court, my name is Kimberly Gunning and I'm here on behalf of the appellant, Michael Chesbro. If possible, I'd like to reserve three minutes for rebuttal. There are two undisputed facts in this case. One is that Mr. Chesbro received automated, pre-recorded telephone calls, what are often referred to as robocalls, from Best Buy. It's also undisputed that these is essentially a loyalty program where consumers earn points for purchases. For example, if someone spends $250 at Best Buy, they'll earn $5 in reward points. These points can then be redeemed towards future purchases. So if a person has $5 in reward points and they purchase a $100 item, they'll pay $95 plus redeeming their points. Those two issues are undisputed. The disputed issue and the key issue today is whether these automated calls that Best Buy made to Mr. Chesbro and others were made for the purpose of encouraging people to buy Best Buy's products and services. The district court held as a matter of law that the calls did not do so and granted summary judgment for Best Buy and for violation of the Federal Telephone Consumer Protection Act, the TCPA, the Do Not Call regulations promulgated under the TCPA, and two Washington state law claims. One for violation of the Washington robocall statute, which our Washington courts have referred to as the WADAD, kind of a silly name, as well as the Washington Do Not Call statutes. What these statutes have in common is they prohibit robocalls that are advertisements, commercial solicitation, and or telemarketing. And all of those definitions, whether with respect to the TCPA where you go to the regulations for a further definition or the Washington statutes, the common definition is that the calls must be made for the purpose of encouraging consumers to buy products and services. Counsel, one of the arguments made by Best Buy is that these calls were not unsolicited or unwelcome, which is one of the requirements of these statutory prohibitions, because at one point your client joined the reward zone program. Assuming that he did, how does how do we determine whether he withdrew his consent? Is that is that a factual question for further development or is the fact that he kept telling him to stop and then ultimately filed this lawsuit sufficient to show that any consent was withdrawn? There are a couple questions I believe embedded in your Honor's question. One is the issue of whether Mr. Chesbrough, in fact, was part of the reward zone program. And the record in this case is limited because that issue was not the issue the court decided on summary judgment, but the record does reflect Mr. Chesbrough's deposition testimony where he unequivocally says he did not sign up for the reward zone program. So at a minimum it's an issue of fact? Yes, Your Honor. It is an issue of fact and would presumably be an issue that might be developed if the case were remanded on the threshold issue the court decided as whether the calls were solicitation. Counsel, does the record reflect whether or not signing up for the reward zone program automatically was consent to receive calls? Is there anything in the record about that, that as part of making automated calls? In the record there is a reference to the reward zone guidelines, which were then and I presume still available on Best Buy's websites. And one of the rules, I suppose the terms and conditions of signing up for the program, is that the person consent to being contacted for marketing purposes. It's not an issue we have to reach here. I would note, however, that the Federal Communications Commission has issued strict guidelines as to what constitutes consent to robocalls in particular and also what constitutes ratification of that consent. And the record does reflect, as we put in the factual section of our brief, that Mr. Chesbrough repeatedly asked that Best Buy not call him, including filing a complaint with the Consumer Protection Division of the Washington Attorney General's office, to stop and then begin again. The District Court erred as a matter of law when granting summary judgment for four reasons. And the first reason is the most important. And, in fact, if the Court reverses on this issue, it need be the only issue reached today. The District Court applied the wrong legal standard when determining whether the calls were commercial solicitation. It also failed to interpret the evidence, as would a Washington court. It failed to review the evidence presented and inferences from that evidence in a light most favorable to Mr. Chesbrough, as the summary judgment standard requires. And it abused its discretion when it denied his request for a 56D continuance. Going to the most important of those errors, and the error which, again, is dispositive here, what legal standard to apply when determining if a call is made for the purpose of encouraging someone to buy goods and services. And the FCC report and order, which was issued in 2003, which is a summary of the stakeholders' comments and the FCC's conclusions at the point in time they were revising interpretive regulations and adding some, makes clear that whether an automated call gives rise to TCPA liability turns on the purpose of the call. If the call is motivated in part by the desire to ultimately sell goods and services, it falls into the category of prohibited calls. And the FCC report and order makes clear it doesn't matter if the call is intended to offer something for sale during the call or in the future. It just has to be motivated in part by the desire to sell goods and services. So what standard are you saying that the district court used? The district court gave a nod to the FCC report. There's a discussion of the sort of dual-purpose calls, calls that may be motivated in part. But ultimately what the district court did was look at the four corners of the script of these calls and conclude that the calls were informational. Most importantly, what the district court did not do was there were some Best Buy documents in the record that were produced that discussed both the purpose of the reward zone program, but more importantly, the purpose of the recorded calls in advancing the purpose of that program. But does the FCC standard say what documents the district court is supposed to look at before making the determination? It does not specify what documents a court is supposed to look at. So what precluded the district court from relying solely on the script? There are some cases issued subsequent to the FCC report and order, which make clear, and this is actually in the FCC report and order, that the caller's characterization of the call in the script is not dispositive. For example But those are two separate things. One is what does the script say? The second is how does the person who wrote it characterize it? And it's clear that you don't have to allow their label to control, but why wouldn't the call itself rise or fall with what's in it? Your Honor, it's, I suppose, an analogy, not a perfect analogy, but one I'll start with is looking at contract interpretation, and it's often necessary to look to extrinsic evidence to determine the party's intentions when they contracted. And in this case, it's fairly clear that given the FCC report and order, and given the explicit language of the regulations, no company, including Best Buy, is going to include an explicit offer to sell a specific item. Well, you know, it's interesting to me that you're relying so heavily on this I mean, they say, you know, use these certificates. Well, the only possible use is to come by their products. So I'm not sure why you're pressing so hard to get us to look beyond what the calls actually say. I completely agree with your Honor's statement, and certainly I'm obviously only speaking for myself, but it seems to me that in order to be speaking of a call, the person being regulated needs to know that this call, as it exists, is either okay or not okay without resort to, you know, some background information, whatever it might be. It just seems implausible that we should have to look beyond or that they should have to look beyond what they're actually going to say. But also, we don't have to, to me, buy into how they characterize what they've done, which is a different question. That's correct, Your Honor, and, you know, there's certainly an argument, and one which I, of course, and my client would agree with, that from our perspective, you can look at the script of the call, and you can look at the discussion of the reward zone purposes. It cannot be disputed that the certificates It can't be disputed that the point of the certificates is to get people to go to Best Buy and spend money. You can't redeem the certificate for $5. You have to spend more money, and urging consumers that the certificates are going to expire, of course, is an encouragement to come in and spend more money immediately. There was some confusion, and perhaps there still is some confusion, given that 2003, after publishing the new rules for comment, the FCC issued the report and order, because it was clear there was much dispute as to what was meant by made for the purpose of encouraging the purchase of goods and services. And the FCC, the line that the FCC drew, and this is in the introduction to the report and order, is that the rules strike an appropriate balance between maximizing consumer privacy protections and imposing an undue burden on telemarketers. Because at that point, many companies were saying, we're not sure where you're drawing the line. And thus, the discussion in the report of dual-purpose calls and emphasizing that a call can be both informative for customer service and also be made for the consumer. I want to quickly address the 56F issue, so I can reserve some time for rebuttal. The procedural posture of this case was interesting. The initial motion brought by Best Buy was a Rule 12c motion. The district court acknowledged in the order converting the motion to a summary judgment motion that the court's decision could not be made just based on the motion and allowed the parties to submit a supplemental briefing. The record also reflects that in the months just before this motion was filed, there were, in fact, three stipulations on file in which Best Buy agreed that discovery was far from complete. The electronic discovery would take quite a while. In fact, initially, discovery was put on hold because Best Buy's busiest season, the holiday season, was approaching, and it simply wasn't viable to conduct discovery. So there was no dispute discovery was incomplete. There can be no dispute from that record that Mr. Chesbrough diligently pursued discovery, made an appropriate request for discovery, as the district court implicitly acknowledged when it considered the request. And Mr. Chesbrough also referenced specific categories of documents that would bolster the inferences and the statements in the documents that had already been produced. If the court has no further questions at this time, I will reserve time for  You may do so. Thank you. Good morning, Your Honors. My name is Anne Lochner from Robbins, Kaplan, Miller, and CREC, and I represent Best Buy. May it please the court, counsel, the district court's order here should be affirmed, and it should be affirmed for three reasons. First, none of the calls that are at issue here, based on the scripts, the undisputed scripts, advertise property, goods, or services. Property, goods, or services. Best Buy sells goods, right? It does, Your Honor. And the combination of thank you for shopping at Best Buy and come use your reward certificate seems to me a solicitation for someone to come buy something at Best Buy. Your Honor, that's a good point. But the scripts themselves do not say come shop at Best Buy with your reward zone. In fact, it's very clear. Is there any other possible use for a Best Buy reward certificate besides to redeem it at Best Buy when purchasing property? No, Your Honor. But the purpose that we're looking at here is not the purpose of the reward certificate. It's the purpose of the statements in the call. But realistically, I mean, we have to apply some common sense here, right? And the whole point of all of these kinds of reward schemes by all sorts of people, from airlines to clothing manufacturers to everybody, is to get you to come in and buy it. When I get online certificates from Chico's, they want me to come in and buy something with those, right? And yes, Your Honor. I'm sure they do. I think most of them do. And Best Buy is not doing this just to feel good about itself. It's doing it to get people to come in and buy things that cost more than the $5 of the certificates. But, Your Honor, I think the difference, and Your Honor mentioned an email with some sort of certificate. There are documents in the record, even though they're not relevant because, again, we can look at the script. But they do distinguish the big difference between the emails that Best Buy sent out, conveying some of the same information, and then the voicemails, which conveyed only the information. And the voicemails are very objective. They state, I'm calling from Best Buy. This is the number of certificates you had. They were mailed out on this day. And if you need to print them again, you can print them here. What's the purpose? What other purpose could they possibly have? Of the calls, Your Honor, or the certificates? Yes. What other purpose? Tell us. The calls themselves are to convey the information. Why? Why are they doing? Why are they conveying that information? Well, Your Honor, it depended on the call. But I think the second one. No, the ones that were in these calls that were. Yes. Dissecting the script. What is the purpose of that script? Well, the second call, for instance, Your Honor, was to explain to people that there were changes being made in the program. And so the concern there was that people would be, if they did not. Tell us about the first one. The first one, Your Honor, was to tell people that their certificates would be expiring. And what's the purpose of telling them that? So that they would not get to a point where they would try to use that. So they would thank you for shopping at Best Buy, right? That's in the script. Thank you for shopping at Best Buy. That's what this is all about, shop at Best Buy. Your Honor, but I think we need to make clear that the statute at issue is written to talk about property, goods, or services. I don't see that's not an issue. I'm sorry. It seems not an issue. Best Buy sells property. And if people come shop there, they buy stuff. So it's not that it's some ethereal thing that doesn't count as goods or services. You sell goods. That doesn't seem to be an issue in the case. The question is whether you're soliciting people who don't want it to come buy the goods at your store. And I think Your Honor made the point before that it is important for companies to know where the line is. It shouldn't depend on documents. It depends on common sense. Yes, Your Honor. If someone tells you they don't want the information that you're providing them, then what would be the motive of the store to press information on someone who has plainly stated they don't want that information? Why would those calls continue to be made? Well, I think with respect to the second call where there's a dispute, but I don't think it's a material dispute for what we're talking about here, the second call was to tell people things are changing and if you want to remain a member that you need to go online and provide some further information. Someone has said, I don't want any more calls from Best Buy. Do not call me again. What would be the purpose of telling them, even though you told us not to call you anymore, we're calling you to tell you this? I think the tricky piece, Your Honor, is that it's a catch-22 for a company. If they didn't call and the person later as a member comes in and tries to get whatever benefits it thought it had, only to find out that those changed and they didn't have it. You could mail it and then they could tear it up and throw it away. This is only about telephone calls, robocalls, that people don't want to interrupt their personal space. It's true, Your Honor. There's other mechanisms for getting to people. Or you could say, you told us not to call you anymore, so we didn't call you. Simple. Your Honor, I understand, but what Best Buy was trying to do here is looking at the statute, and the statute says that the call must advertise products, goods, and services, or services. And here it simply did not even reference products, goods, or services. So you think that someone who calls and says, this is Safeway calling, we urge you to come to Safeway today and shop, but it doesn't mention the word food or pharmacy. That's okay because it doesn't actually mention the goods that they sell? Well, I think there, Your Honor, she uses the term, we urge you to come in. So really it's all a question of how we interpret the thank you for shopping at Best Buy, whether that's urging you in a more polite form, like would you please be able to tell me what time it is really isn't a yes or no question. In common sense, you would tell me what time it is. And I don't understand why this isn't similar. Well, I think, Your Honor, the FCC did try to clarify the confusion here. And the confusion is such that it used the examples of a dual-purpose call. And in the examples that they used, the examples they used included a mortgage company calling to say there's more information, there's a new mortgage you can refinance, or someone who, a telephone company that says there's a new plan for you. They were referring to specific plans, specific services. The tricky piece here with reversing the lower court here, Your Honor, is that this expands these laws far broader than they've ever been expanded before. There is no case out there that does not even reference products, goods, or services and holds that they are commercial solicitations. There needs to be a way that companies can provide information. And the FCC makes that clear. So if there were another sentence that said Best Buy sells goods, this would be a solicitation, because that is implied by thanking people for shopping with you to buy something unnamed, that that somehow lets you off the hook? Well, I think the difficulty, Your Honor, is that the statute makes clear that not all commercial calls are prohibited. Correct. Correct. So we have to decide whether or not this call was informational or whether it was solicitation. So I don't think we have an issue. I don't have an issue with your representation. The issue is with the wording that was used in the call. I think the trouble with reversing the lower court, Your Honor, is that it would wipe out the terms goods, products, and services from the statute. Otherwise, it could just say it prohibits an advertisement. But it made clear in every single definition under any statute here that's describing commercial solicitation, advertisement, whatever it may be, every single one of them used the terms products, goods, and services. And if we suddenly say, okay, a company who is, no question, their goal is to sell more product, that's what they need to do, particularly ones that have shareholders. But any contact, then where do we draw the line? We draw the line at real property, which isn't named, but you don't sell that. But, Your Honor, the question being, how can any retailer, for instance, any commercial retailer have any contact with a real property? To me, this is like only a lawyer could buy the argument that you're making. And I'm really just speaking for myself, obviously, when I say that. But it seems to me plain that your client sells goods. That's not an issue. That's a given. That's a fact. Absolutely right. So when you ask people politely to shop at your store where you sell goods, I don't understand why this is. I mean, informational that wouldn't fall within this would be a call that said, we noticed that you live on 23rd and Vine Streets, and we'd like you to know that we're opening a new store four blocks from you. That might be informational, not really directly selling. Who knows? Maybe that's closer to the line. But here, it seems to me that you're not even close to the line. But I think there, Your Honor, that example that Your Honor just provided, again, anyone can try to construe that to say, well, of course, why else would you be notifying them that a Best Buy is opening other than to come into the store? That might fail, too. But it seems a little bit more remote than this, which seems pretty aggressive and pretty direct. But this is coupled with a specific program that solicits people to come in and buy, because there's no other use for the Rewards Zone award than to come in and buy. So that's a little different than just a call out of the blue to somebody who doesn't already have the incentive to shop there. Perhaps, Your Honor, but I think either way, there's also an informational purpose to these calls, which is you as a customer have already received this benefit from us, already received it. You can use it or you cannot use it. You've already received it, and we just need to let you know information that can impact that. Absolutely. But if it's a combination of information plus solicitation, don't you lose? If it is solicitation with products, goods, or services, Your Honor, and I do think that that phrase cannot be minimized, that any company for the most part is going to have some sort of service or product or property or good that it will provide. And if they cannot make a call, and anyone can make the comment, even if you call to say thank you for shopping at Best Buy, that's just thanking them for the past, but will that perhaps increase sales? Maybe. Probably. That would be a little closer to the line in terms of information versus solicitation. Well, and I think that's the difficult piece here again, Your Honor, and I think the danger of reversing the lower court here is that there's a lot of questions about the line. And right now the line, as written by the legislature and Congress,  we have to interpret that. Absolutely. We have to interpret that line. And oftentimes that's how the statutes are shaped, you know, through cases. They keep drawing the line finer and finer. So we have to start somewhere. I absolutely agree, Your Honor. But what I would say is that the court's role is absolutely to take confusion and to clarify it, to take a gray area and narrow that gray area. But here what would happen by reversing here is to take what is clear, products, goods, and services, and expand it to a script that undisputedly does not reference, does not reference products, goods, or services. I don't know if I agree with that. Maybe not directly reference, but indirectly I'm not sure that your argument is persuasive. I think the trick, Your Honor, is that the parameters of the statute, the language of the statute is what controls, along with the clear language of the script. But you can solicit the purchase of goods without necessarily directly referencing those goods. And people do that all the time in advertisements that are couched as advertisements. You know, come see us if you have plumbing problems at Roto-Rooter. While they don't really describe their service, they just say come see us. But they're clearly advertising a service. It just seems to me that your argument asks people to leave their common sense at the door. Well, I think, Your Honor, the judge in the lower court mentioned this and said if the calls went on to say come see us, come use your script. But your argument is that still wouldn't matter because it doesn't specifically reference the goods or services. Perhaps not, Your Honor, but that's a gray area that's even closer to the line. No, I'm just asking you about your, because under your argument, no matter how obvious the solicitation or advertisement is, if it doesn't specifically refer to a good or services, you're home free. That's how I understood your argument. Because that's the way the statute's written, Your Honor. Okay, so in my example, that wouldn't be an advertisement, even though it's an advertisement on television, because it doesn't actually specifically mention the goods or services. But, again, we do have to go back to looking at the purpose. And if there's just a call that says come on in, the purpose there, there's no other purpose here. Here there is another purpose, and that purpose is to provide information, and that is clear from the scripts themselves. The difference with the dual-purpose calls, like I said, even the FCC, who is trying to clarify things, the examples that they gave all referenced services, products, or property, goods, some sort of something that would be sold. Here nothing like that is referenced. It is simply stating the objective facts that the person who is intended to receive the call should know. And there is a distinction there. The concern we have here, Your Honor, is if this is reversed and this does not fall within the exemptions of the statute, how will people be able to advise clients? When they come in, other than to say if you are a retailer and you sell anything, you can't make a call. And the intent of the legislation was to reduce the number of calls, not to help robocallers to have a wider range of opportunities. So that wouldn't necessarily be inconsistent with the purpose of the statute, to limit the ability of robocallers to fit within the parameters. I don't disagree, Your Honor, but I think the concern is where will the parameters be if the script that undisputedly does not even reference goods, products, goods, or services, if that does not fall outside or fall within the exemptions, I should say, outside the statute, where are those bounds? And so I think what we're doing here is we're taking clarity that exists right now in the jurisprudence because there's not one case that plaintiff can point to where there is not a reference in some way, shape, or form, a picture, a depiction, something that references a product, good, or service. Here now we will be expanding that to some indirect, implicit situation, which makes it very difficult for companies to know where that line is. Counsel, I think we understand your argument. You're about a minute and a half over your time. I understand, Your Honor. I appreciate the Court's time and consideration, and we respectfully ask that this Court does affirm the lower court. Thank you. Thank you very much. Ms. Gunny, you have a brief rebuttal time remaining. Thank you, Your Honor. Best Buy's argument today ultimately boils down to a couple things, one of which is urging the Court to interpret the statute and the regulations as requiring mention of specific products or services during the call. There's absolutely nothing in the statute or the regulations that imposes such a requirement. Indeed, there's nothing in the FCC's interpretation that imposes such a requirement either, and this Court owes deference to that agency interpretation under our standard. What the FCC interpretation in the report and order does do is it does set forth a line dividing calls which are actionable under the TCPA and calls which are not. Best Buy makes the slippery slope argument they've made throughout this case, but it's simply not true that there is no line. In fact, in the report and order, in its footnote 477, the FCC comes up with an example of a call that would not be actionable. As long as the message is limited to identification information only, such as name and telephone number, it will not be considered an unsolicited advertisement under the rules. As the Court, as Your Honor mentioned earlier, this is a common sense determination. There's no other meaning or there's no other reason for these calls than to encourage people to redeem reward zone points. But even going beyond the common sense interpretation, if a corporation can understand common sense, the FCC report and order provides the guidance. There's no need to sell a specific product. The call must just be motivated in part by the desire to sell goods and services either during the call or in the future. Thank you, Counsel. We appreciate the excellent, helpful arguments of both parties in this interesting case. The case is submitted. And our final case on this morning's calendar is Gress v. Conover Insurance.
judges: Noonan, Graber, Rawlinson